**David LINDBERG, Respondent,**

v.

**Michael C. FASCHING, M.D., Appellant.**

**No. C7–03–242.**

Court of Appeals of Minnesota.

Aug. 19, 2003.

Karl L. Cambronne, Jeffrey D. Bores, Becky L. Erickson, Chestnut & Cambronne, P.A., Minneapolis, MN, for respondent.

David F. Herr, Geoffrey P. Jarpe, Kai H. Richter, Maslon, Edelman, Borman & Brand, LLP, Minneapolis, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge, HARTEN, Judge, and MINGE, Judge.

## OPINION

MINGE, Judge.

Appellant challenges a summary judgment determination that an easement over his land is valid despite the lack of a filed notice of the easement, which is required by the Marketable Title Act. The district court found that because of the scope of the easement, and because respondent and his predecessors had used the easement, they had had adequate possession of the premises to meet the exception to the filed-notice requirement of the Marketable Title Act. Because there is a genuine issue of material fact whether the use of the easement constituted "possession" within the requisite 40–year period and whether the easement had been abandoned, we reverse the grant of summary judgment and remand for trial.

## FACTS

Appellant Michael Fasching and respondent David Lindberg own adjoining properties on Lake Minnetonka. The properties are not registered Torrens properties. In the early part of the 20th century, prior owners of the properties executed an agreement that established an easement but incorrectly described its location. On October 14, 1950, the parties' predecessors in title signed an easement agreement that corrected the earlier agreement and provided that each landowner received a "perpetual right of way for road purposes" over a ten foot strip of the other's property. The agreement was recorded on December 26, 1950, and it provides each landowner with access to parts of Lake Minnetonka that the other landowner's property borders. In this case, only that part of the agreement that grants Lindberg rights over Fasching's property is at issue.

In February 2002, Lindberg brought suit asserting his easement rights, alleging that Fasching "placed objects on the easement property—including several trees, a fence, and small boulders—that illegally interfere with [Lindberg's] reasonable use of the easement," and seeking removal of the same.

Both parties moved for summary judgment. Fasching argued that the Marketable Title Act, Minn.Stat. § 541.023, subd. 1 (2002), barred enforcement of the easement because the easement agreement was more than 40 years old, and neither

Lindberg nor his predecessors ever filed the statutory notice required by the Act. Fasching also argued that Lindberg had abandoned the easement according to common-law principles of abandonment.

Lindberg testified that he knew of the easement when he bought the property, that he used the easement to access the lake, and that he walked on the easement "an average of five or six times" in a given year. Lindberg asserted that he used the easement year-round for walking, riding his snowmobile, and riding on a sled. Lindberg also testified that before Fasching bought his property, Lindberg "regularly used the easement, without problems"; that at one point, a corner of the easement had been covered with blacktop, but that Fasching had ripped out the blacktop; that the rest of the easement has always been covered with grass and dirt; that there has never been gravel over the easement; that although a maple tree is growing within the easement, he "can go around this tree and still use the easement"; that the tree apparently pre-dates the easement agreement; and that as of November 2002, there was brush growing in the easement.

Scott Prochnow, a previous owner of Lindberg's property, asserted that he used the easement by walking across it to access the lake for swimming, windsurfing, and going back and forth from his boat to his house. Prochnow also reported that he used the easement during the winter months for cross-country skiing.

Fasching testified that although he was aware of the recorded easement agreement when he bought his property, he did not know whether the easement was valid and that at the time he purchased his property, he concluded that the easement had never been used because of the maple tree, brush, debris, and two stumps in the middle it. Fasching continued that he never asked Lindberg whether he had ever used or was using the easement and that although he knew Lindberg had driven his snowmobile over the easement on at least one occasion, the large maple tree in the easement made it impossible to drive a snowmobile and stay within the boundaries of the easement.

The district court granted summary judgment in favor of Lindberg. The court concluded that although Lindberg had not filed the requisite notice under the Marketable Title Act, the possession exception of the Act applied. The district court also concluded that Lindberg and his predecessors did not abandon the easement according to the common law because there was no evidence of an intent to abandon the easement.

## ISSUES

1. Did the district court err by granting summary judgment that Lindberg's claimed easement met the possession exception in the Marketable Title Act?

2. Did the district court err by granting summary judgment that Lindberg did not abandon the easement according to the common law?

## ANALYSIS

The district court should grant summary judgment when there is no genuine issue of material fact and either party is entitled to a judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). On appeal from summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact, and (2) whether the lower court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990).

We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio*, 504 N.W.2d at 761. Even though an appellate court may disagree with the trial court's analysis of some issues, summary judgment will be affirmed if it can be sustained on any grounds. *Myers v. Price*, 463 N.W.2d 773, 775 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991). When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, which we review de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998).

## I.

■ We first address Fasching's argument that summary judgment should not be granted in favor of Lindberg because Lindberg's easement was extinguished by operation of the Marketable Title Act. The Marketable Title Act provides, in part:

As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced * * * to enforce any right, claim interest, incumbrance or lien founded upon any instrument event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded * * * a notice * * * setting forth [the basis for the claim].

Minn.Stat. § 541.023, subd. 1 (2002). The purpose of notice is to confirm the continuation of an interest in property and to eliminate stale claims that clutter the title. *Wichelman v. Messner*, 250 Minn. 88, 98, 83 N.W.2d 800, 812 (1957). According to the statute, "[a]ny claimant * * * barred by the provisions of this section shall be conclusively presumed to have abandoned" all interests created. Minn.Stat. § 541.023, subd. 5 (2002). The provisions of the statute, however, do not apply to "bar the rights of any person * * * in possession of real estate." *Id.*, subd. 6 (2002).

Fasching argues that an easement, by definition, is incapable of possession by the easement holder. For support, Fasching relies on the absence of any reported decision finding that an easement holder's possession of an easement is sufficient under the Marketable Title Act. But neither this court nor the Minnesota Supreme Court has concluded that it is impossible for an easement holder to be in possession of the easement as required by the Act. Instead, easement controversies have been discussed in a fashion that assumes that in appropriate circumstances, use of an easement would constitute "possession" under the statute. We do not accept Fasching's argument that an easement is impossible of possession.

In *Caroga Realty Co. v. Tapper*, the Minnesota Supreme Court concluded that possession of the easement in question did not rise to the level required by the Marketable Title Act. *Caroga Realty Co. v. Tapper*, 274 Minn. 164, 178–79, 143 N.W.2d 215, 225–26 (1966). The court held that the level of possession required by the Marketable Title Act is possession that is "so notorious as to be considered adverse possession." *Id.* at 179, 143 N.W.2d at 226. The court noted that possession under the Act must be

actual, open, visible, and exclusive possession inconsistent with the title of the apparent owner by the record. The possession must be clear, unequivocal, and unambiguous. It is insufficient if equivocal, temporary, or occasional. It must

be of a character which would put a prudent person upon inquiry.

*Id.*

Ten years after *Caroga,* in *Township of Sterling v. Griffin,* the Minnesota Supreme Court held that a township was not in possession of a claimed town road within the meaning of the Act. *Township of Sterling v. Griffin,* 309 Minn. 230, 237–38, 244 N.W.2d 129, 134 (1976). In *Sterling,* the court defined possession under the Act as use that is sufficient to provide notice of the possessor's interest in the property. *Id.* at 236, 244 N.W.2d at 133. The court also addressed easements and noted that in determining whether a party was in possession of an easement, "due regard must be given to the nature of the easement." *Id.* (citation omitted). But, the court added, possession cannot "fall below that which will put a prudent person on inquiry." *Id.*

There are no reported decisions after *Sterling* that discuss the apparent tension between the *Caroga* requirement of use that constitutes adverse possession and the *Sterling* principle that the degree of possession required depends on the nature of the easement. But the cases before *Sterling* and *Caroga* suggest that the court was leaning toward a more relaxed definition of "possession" for easements.

In *Farmers' State Bank v. Cunningham,* the issue before the court was whether a party had notice that someone other than the record owner had an interest in a piece of property. *Farmers' State Bank v. Cunningham,* 182 Minn. 244, 234 N.W. 320 (1931). In discussing the rule that "possession of real estate is constructive notice of the title of the possessor," the court noted that

> [s]uch possession, in order to be sufficient to constitute notice, must be an actual, open, visible, and exclusive possession inconsistent with the title of the

apparent owner by the record. The possession must be clear, unequivocal, and unambiguous. It is insufficient if equivocal, temporary, or occasional. It must be of a character which would put a prudent person upon inquiry.

*Id.* at 246, 234 N.W. at 321. However, the court in *Farmers' State Bank* went on to state:

> The sufficiency of the facts depend upon a variety of circumstances. The extent and character of the property, and the uses to which it may be put, are obviously matters of considerable importance in determining whether or not the occupancy of it is sufficient to put a purchaser upon inquiry.

*Id.* This language is consistent with the cautionary language from *Sterling* and supports a more flexible standard for possession of an easement under the Marketable Title Act.

In *United Parking Stations,* the court stated that possession

> obviously means actual occupancy or use of part of all of the real property * * * right-of-way easements which are manifested by actual use or "occupancy" (*consistent with the nature of the easement created*) are protected even if the requirement of filing notice is not met.

*United Parking Stations v. Calvary Temple,* 257 Minn. 273, 276, 101 N.W.2d 208, 210 (1960) (emphasis added) (quotation omitted). This approach, like the approach in *Farmers' State Bank,* is also consistent with the easement standard in *Sterling.*

■ Mindful of the language from *Farmers' State Bank* and *United Parking,* and mindful that *Sterling* was decided after *Caroga,* we conclude that the Marketable Title Act possession standard for easements is a more flexible possession standard than the standard urged by

Fasching and that due regard must be given to the nature of the easement. After all, occasional-use easements do not prevent all use of the easement premises by the owner of the servient estate. Such easements are by definition less than fee title. It would be illogical to insist that possession sufficient to protect such easements be the same intensity of possession as required to establish or maintain fee title or an intensively used easement like a road. However, the use must be sufficiently obvious so that a prudent person would be put on inquiry regarding the existence of the easement.[1]

 The easement was created by express grant, and its original scope is dependent "entirely upon the construction of the terms of the" easement agreement. *Larson v. Amundson*, 414 N.W.2d 413, 417 (Minn.App.1987) (citation omitted). The express grant creating the easement is a contract; that contractual easement must be defined. Where a contract is ambiguous, the interpretation of the contract is a question of fact, and extrinsic evidence may be considered. *City of Virginia v. Northland Office Prop. Ltd. P'ship*, 465 N.W.2d 424, 427 (Minn.App.1991), *review denied* (Minn. Apr. 18, 1991). The initial determination as to whether a contract is ambiguous is a question of law. *Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640, 643 (Minn.App.1985), *review denied* (Minn. June 24, 1985). A contract is ambiguous if it is reasonably susceptible of more than one meaning. *Id.* at 644.

 Here, the easement agreement is for a "perpetual right of way for road purposes." The easement agreement gives no indication as to what constitutes "road purposes." The easement agreement does not say whether the right of way may be used as an unimproved road or whether an actual road has to be constructed. As used here, the phrase "road purposes" is ambiguous, and the interpretation of the phrase is therefore a genuine issue of material fact.

The nature and extent of the use of the easement premises since 1950 is unclear, but important because possession or use is a substitute for filed notice. In evaluating possession and use, the critical timeframe is the end of the 40–year period. Two questions are presented: First, what was the scope or nature of the easement? Second, giving due regard to the nature of the easement, was the use sufficient to provide notice to the owner of the servient tract of the existence of the easement? The most detailed testimony of use is by Lindberg. Although his use was almost entirely after the 40–year period in which the possessory use must have occurred, some of Lindberg's use was before the expiration of the 40–year period, and all of the use by Prochnow (Lindberg's predecessor in title) occurred before the end of the 40–year period. Although their use was uncontradicted by Fasching, without a determination of factual questions as to the nature and use of the easement, summary judgment was premature and was not proper.

 A factual determination is needed as to whether the use of the easement would constitute adequate notice to put a prudent person on notice of Lindberg's claim of possession. One obvious problem in this evaluation is that when a modest easement is claimed, its use may not be

**1.** This approach is consistent with the Minnesota Title Standards, which state that for purposes of the Marketable Title Act, possession of an easement occurs when actual use or occupancy of the easement is consistent with the nature of the easement. Minn. State Bar Ass'n, *Minnesota Standards for Title Examinations* Standard No. 61 n. 2 (12th ed.2003).

adequate to give a prudent person warning of its existence. However, the trier of fact should not be too demanding of the use required of a more limited easement that has been a matter of record and should expect the prudent person to be quicker to make inquiry of the easement. The trier of fact should consider whether the use of the limited easement would place the prudent owner or prudent purchaser on inquiry.

## II.

■ Next we address Fasching's argument that even if the easement was not extinguished by the Marketable Title Act, Lindberg should not have been granted summary judgment because Lindberg abandoned the easement according to the common law of easements.

■ "A claim of abandonment can be upheld only where nonuse is accompanied by affirmative and unequivocal acts indicative of an intent to abandon and is inconsistent with the continued use of the easement." *Richards Asphalt Co. v. Bunge Corp.*, 399 N.W.2d 188, 192 (Minn. App.1987) (citations omitted). Whether an easement has been abandoned is generally a question of fact. *Simms v. William Simms Hardware, Inc.*, 216 Minn. 283, 293, 12 N.W.2d 783 (1943).

Fasching argues that the district court erred by finding that there was "no evidence of an intent to abandon the easement." Fasching's argument is premised on the scope of the easement and the purpose of the easement. Fasching contends that because there was never actually a paved roadway on the easement, there was an intent to abandon the easement. In his memorandum in support of summary judgment, Lindberg noted that whether the easement had been abandoned was a question of fact, but that it

was nonetheless appropriate for the district court to decide the issue because:

> [I]n this case, the parties do not dispute that the easement has been used. Instead, Fasching argues that Lindberg's failure to use the easement as a road to drive a car to get somewhere other than the lakeshore constitutes nonuse according to the language of the easement. Under these circumstances, the court can determine whether Lindberg may continue to use the easement to access the North Arm of Lake Minnetonka.

Thus, Fasching argues that not paving the easement and not turning the easement into an actual "road" is inconsistent with the terms of the easement agreement, but Lindberg argues that his use of the easement is consistent with the terms set forth in the easement agreement.

Whether Lindberg abandoned the easement by nonuse is dependent on the scope of the easement. The interpretation of the ambiguous phrase "road purposes" will affect whether or not Lindberg abandoned the easement. As we have already determined, the interpretation of that phrase is a genuine issue of material fact. Neither party is entitled to summary judgment on this issue.

## DECISION

Whether an easement holder's use and occupancy of an easement rises to the level of possession required by the Marketable Title Act depends on the nature of the easement and whether its use gave adequate notice of its existence and put the prudent person on inquiry. Because there are genuine issues of material fact as to the nature and scope of the easement in this case and whether the use would put a prudent person on inquiry, we reverse the

district court's grant of summary judgment and remand this case for trial.

**Reversed and remanded.**