In the Matter of the Application of Anthony E. SAMPAIR and Laurie K. Sampair to register the title to the following described real estate situated in Washington County, Minnesota, namely: Lots 1 and 2, Block 1, Lakewood Park Third Division, applicants, Respondents,

v.

VILLAGE OF BIRCHWOOD, et al., Defendants,

Jeffrey Lutz, et al., Appellants (A08–1494),

Josephine Berg Simes, et al., Appellants (A08–1505).

Nos. A08–1494, A08–1505.

Supreme Court of Minnesota.

July 8, 2010.

Mark E. Greene, Sarah L. Krans, Bernick, Lifson, Greenstein, Greene & Liszt P.A., Minneapolis, MN, for respondents.

Wayne B. Holstad, St. Paul, MN, for appellants Jeffrey Lutz, et al.; Frederic W. Knaak, Jessica A. Johnson, Greg T. Kryzer, Knaak & Kryzer, P.A., Vadnais

Heights, MN, for appellants Josephine Berg Simes, et al.

Cameron R. Kelly, Kevin S. Sandstrom, Eckberg, Lammers, Briggs, Wolff & Vierling, P.L.L.P., Stillwater, MN, for amicus curiae City of Birchwood Village.

## OPINION

GILDEA, Chief Justice.

This appeal involves the application of Minn.Stat. § 541.023 (2008), also known as the Marketable Title Act (MTA), to a number of easements which have been of record over 40 years. The issue before us is whether the conclusive presumption of abandonment in the MTA operates to extinguish appellants' interests in the easements, or whether appellants fall under the MTA's exception for parties in possession of real estate. The parties dispute the proper standard of proof necessary to satisfy the MTA's possession exception and who bears the burden of proof to demonstrate possession. We conclude that the MTA possession exception requires those seeking its protection to prove use of an easement sufficient to put a prudent person on notice, giving due regard to the nature of the easement at issue. We further conclude that the MTA possession exception requires those seeking its protection to prove possession beginning at the deadline for filing notice under the MTA—i.e., within 40 years of when the property interest was created—and continuing through the filing of the relevant action regarding ownership. Because some appellants have met this standard sufficiently to survive a motion for summary judgment and others have not, we affirm in part and reverse in part.

Roughly 100 years ago, several easements were granted across a lakeshore property in Washington County for the purpose of allowing access to White Bear Lake for swimming and boating. That lakeshore property is now owned by respondents, Laurie and Anthony Sampair. Before the Sampairs bought the property, their predecessors in interest, James T. Krizak and Christina R. Palme–Krizak, had filed an application for the property to be registered as Torrens property under Minnesota Statutes chapter 508 (2008).

After purchasing the property in 2007, the Sampairs continued to pursue the Torrens registration application. As part of that application, they sought to have a number of the recorded easements terminated. The Sampairs served each easement owner and won default judgments against the majority of them.

The 15[1] appellants answered the Sampairs' complaints and claimed easements across the Sampairs' property. Appellants' claimed easements were created by deeds issued roughly 100 years ago. Each deed granted a "right of way" over what is now the Sampairs' property to allow boating and swimming in White Bear Lake.

After submitting affidavits asserting use of their claimed easements for various periods of time, appellants moved the district court for summary judgment, a permanent injunction against respondents, and an order instructing the Registrar of Titles to memorialize their easements. The Sampairs also moved for summary judgment

1. Respondents contend that one of the 16 named appellants, Barbara Carson, is not a party to this case as they assert that she did not answer the Sampairs' complaint. There is no record in the district court file indicating that Barbara Carson was named in, or answered, the complaint. Carson's spouse, Robert Carson, is a party, and the deed for the property at issue includes only his name. Because Barbara Carson is not listed on that deed, and because she apparently was neither served with nor answered a complaint, she is not a party to this case. Thus, she is not included among the appellants in this appeal.

and filed a motion to compel discovery. The district court granted the Sampairs' motion for summary judgment and denied all other motions.

The district court held that Minn.Stat. § 541.023 applied to appellants' claimed easements and found that none of the appellants had filed the required notice of their claims under that statute. Therefore, appellants were conclusively presumed to have abandoned their easements. The district court further held that none of the appellants had provided sufficient evidence to create a genuine issue of material fact as to whether they met the possession exception of Minn.Stat. § 541.023. The district court stated that the affidavits of Josephine Berg Simes, relating to an easement shared by Simes, James Berg, and Frima Bender, might contain allegations of sufficient facts to create an issue of material fact, but the court concluded that, because Simes's affidavits appeared to be contradicted by the contents of an earlier letter written by her lawyer that she attached to one of her affidavits, the sham affidavit doctrine precluded the court from considering Simes's affidavits. Therefore, the court held that none of the appellants had created an issue of material fact.

Appellants appealed to the court of appeals, which affirmed the district court on the same grounds. *In re Sampair*, No. A08–1494, A08–1505, 2009 WL 1587166, at *1–5 (Minn.App. June 9, 2009). We granted appellants' petition for review.

## I.

■ On an appeal from a grant of summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in applying the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn.2002). In doing so, we view the evidence in the light most favorable to the party against whom summary judgment was granted—in this case, the appellants. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

This case is governed by the MTA, Minn.Stat. § 541.023, and our precedent construing that statute. The MTA provides:

> As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced ... to enforce any right, claim, interest, incumbrance, or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded in the office of the county recorder in the county in which the real estate affected is situated, a notice ... setting forth the name of the claimant, a description of the real estate affected and of the instrument, event or transaction on which such claim is founded, and stating whether the right, claim, interest, incumbrance, or lien is mature or immature.

Minn.Stat. § 541.023, subd. 1. The MTA applies to every property interest "founded by any instrument, event or transaction that is at least 40 years old." *Id.*, subd. 2(a).

■ By operation of the MTA, when X holds property in fee simple that has been of record for over 40 years, and Y claims an interest in that property that is also at least 40 years old, then Y, or Y's predecessors in interest, must have filed the statutorily prescribed notice of Y's claim within 40 years of the creation of the interest Y now claims. *See* Minn.Stat. § 541.023; *Wichelman v. Messner*, 250 Minn. 88, 99–101, 112, 83 N.W.2d 800, 811–13, 819–20

(1957). The purpose of notice under the MTA is to confirm the continuation of Y's interest in property and to eliminate stale claims that may clutter X's title. *See Wichelman*, 250 Minn. at 99–101, 83 N.W.2d at 812–13. Any potential claimant who has not filed the statutorily prescribed notice within 40 years of the creation of its interest "shall be conclusively presumed to have abandoned" any interest it might have had in the property. Minn.Stat. § 541.023, subd. 5. Easements are among the property interests that can be eliminated under the MTA. *See, e.g., Caroga Realty Co. v. Tapper*, 274 Minn. 164, 177–80, 143 N.W.2d 215, 224–26 (1966).

■ Appellants do not dispute that their easements are more than 40 years old, and they concede that they (and their predecessors in interest) did not file the notice required by the MTA. But appellants contend that their easement rights remain viable because of an exception in the MTA. That exception to the presumption of abandonment provides that the provisions of the MTA do not "bar the rights of any person ... in possession of real estate." Minn.Stat. § 541.023, subd. 6. Even though easements are not possessory estates, the possession exception of the MTA may be invoked by easement holders. *See, e.g., Caroga Realty Co.*, 274 Minn. at 177–80, 143 N.W.2d at 224–26. The question presented in this case therefore is whether the possession exception applies to save appellants' easements. *See* Minn.Stat. § 541.023, subds. 1, 5, 6.

Before turning to the merits of that question, we must first resolve the parties' disputes relating to the application of the possession exception. Specifically, the parties dispute the possession standard and the possession period, and they disagree as to which party has the burden of proving possession. We address each issue in turn.

## A.

We turn first to the question of the possession standard. Specifically, the parties dispute what kind and degree of "possession" is necessary to satisfy the MTA's possession exception. *See* Minn.Stat. § 541.023, subd. 6. Appellants argue that we should adopt the possession standard and reasoning from *Lindberg v. Fasching*, 667 N.W.2d 481 (Minn.App.2003), a case in which the court of appeals traced the evolution of the MTA possession standard and articulated a standard in the context of easements. Respondents do not argue for a particular possession standard but instead argue that, whatever the possession standard, appellants have failed to show possession during the proper possession period.

*Lindberg* concludes that the MTA possession standard for easements should give "due regard ... to the nature of the easement" at issue, but that use of the easement should be "sufficiently obvious so that a prudent person would be put on inquiry regarding the existence of the easement." *Id.* at 486–87. To reach its conclusion, *Lindberg* had to reconcile apparently conflicting case law from our court. *See id.* at 485–88 (discussing the various standards used in our case law). Namely, we stated in *Caroga Realty*, a case addressing the MTA possession standard in the context of an easement, that possession had to be

> present, actual, open, and exclusive and must be inconsistent with the title of the person who is protected by this section. It cannot be equivocal or ambiguous but must be of a character which would put a prudent person on inquiry.

*Caroga Realty Co.*, 274 Minn. at 178, 143 N.W.2d at 225 (quoting *B.W. & Leo Harris Co. v. City of Hastings*, 240 Minn. 44, 49, 59 N.W.2d 813, 816–17 (1953)) (internal

quotation marks omitted). But that standard was taken wholly and without explanation from *B.W. & Leo Harris Co.*, a case that dealt with the MTA possession standard in the context of a claim of adverse possession, not an easement. *See B.W. & Leo Harris Co.*, 240 Minn. at 47, 59 N.W.2d at 815 (noting that defendant's claim was one "of adverse possession").

█ We conclude that the *B.W. & Leo Harris Co.* standard should not apply to the possession of easements, because that standard may be impossible to meet. The use of a right-of-way easement is very unlikely to be "exclusive" for instance. Further, the use of an easement is not necessarily "inconsistent with the title" of a servient-land owner in the way adverse possession is. *See Caroga Realty Co.*, 274 Minn. at 178, 143 N.W.2d at 225; *see also Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn.1999) (discussing elements needed to establish adverse possession). Indeed, we have recognized the need for a more flexible MTA possession standard for easements. In *Wichelman v. Messner*, we implied in dicta that right-of-way easement holders might meet the MTA possession standard if their easements "are manifested by actual use or 'occupancy' (consistent with the nature of the easement created)." 250 Minn. 88, 102, 83 N.W.2d 800, 814 (1957); *see also United Parking Stations, Inc. v. Calvary Temple*, 257 Minn. 273, 276–77, 101 N.W.2d 208, 210–11 (1960) (favorably citing the *Wichelman* dicta in a case addressing MTA possession standard in the context of an easement).

In another case dealing with the MTA possession standard for easements, we articulated a possession standard nearly identical to the one the court of appeals adopted in *Lindberg*, but without specifically addressing the adverse possession standard applied in *Caroga Realty*. *See*

*Township of Sterling v. Griffin*, 309 Minn. 230, 236, 244 N.W.2d 129, 133 (1976). *Cf. Caroga Realty*, 274 Minn. at 179, 143 N.W.2d at 226 (suggesting that, to establish possession under the MTA, the inquiry is whether the claimant "was making use of [the easement] so notorious as to be considered adverse possession"). In *Griffin*, we cited *Wichelman*, *B.W. & Leo Harris Co.*, and *Caroga Realty* and defined the possession standard as use that would put a prudent person on notice of the easement, giving due regard to the nature of the easement. *Griffin*, 309 Minn. at 236, 244 N.W.2d at 133 ("[T]he possession contemplated by Minn. St[at. § ] 541.023, subd. 6, is such as will provide notice of the possessor's interest in the property."). Given that the nature of easements vary, we acknowledged that the nature of the possession also varies. *Id.* (noting that "possession of a town road will differ from that of a private easement"). But we said that the possession "must nevertheless be sufficient to provide the substitute notice contemplated by the act in subd. 6," and therefore it must not "fall below that which will put a prudent person on inquiry." *Id.*

█ In *Griffin* we did not directly reject the apparently conflicting possession standard from *Caroga*. We do so now. We hold that the standard we articulated in *Griffin* is the standard of possession for easements under subdivision 6 of the MTA. This standard requires use sufficient to put a prudent person on notice of the asserted interest in the land, giving due regard to the nature of the easement at issue. 309 Minn. at 236, 244 N.W.2d at 133.[2]

### B.

We turn next to the question of the possession period. Specifically, the parties

2. To the extent *Caroga* is inconsistent with this opinion, it is overruled.

dispute the period of time during which one must demonstrate possession in order to fall within the possession exception in the MTA. The appellants argue that we should interpret the MTA possession exception as requiring proof of possession during the 40–year period immediately before the present action, or alternatively that there should be no set possession period at all, but rather a factual inquiry regarding possession on a case-by-case basis. Appellants further argue that public policy supports their reading of the MTA. Respondents contend that we have already decided the question of the possession period and have repeatedly interpreted the MTA possession exception as requiring proof of possession from the end of the deadline for filing notice under the MTA[3] through the date of the relevant action. We agree with respondents.

Our precedent has consistently interpreted the MTA possession exception as requiring a possession period beginning at the deadline for filing notice—i.e., within 40 years of when the property interest was created—and continuing until the action regarding ownership of the real estate was filed. We stated in *B.W. & Leo Harris Co.*:

> If a claimant subject to the provisions of the [MTA] has not filed the required notice, the only way he can avoid the statute's conclusive presumption is by being in possession at the time [the presumption] would otherwise take effect. If at any later time he abandons his possession, the bar falls and he cannot revive his right by again going into pos-

session. Thus, to avoid the conclusive presumption of abandonment imposed by the statute, the claimant's possession must be continuous.... [T]he claimant's possession must begin or have begun at the end of the 40–year period [for filing notice] and must continue until action is commenced.

*B.W. & Leo Harris Co.*, 240 Minn. at 49, 59 N.W.2d at 816.[4]

As appellants correctly point out, *B.W. & Leo Harris Co.* did not address the MTA possession exception in the context of easements, but we have applied this same standard in every case that has involved easements. In *United Parking Stations*, we interpreted the MTA to require a claimant to a right-of-way easement to prove possession beginning on the day of the deadline for filing the MTA required notice. *United Parking Stations, Inc.* 257 Minn. at 275–77, 101 N.W.2d at 210–11. In *Caroga Realty*, a case dealing with the MTA's application to a right-of-way easement, we cited and applied the possession period articulated in *B.W. & Leo Harris Co. Caroga Realty Co.*, 274 Minn. at 177–80, 143 N.W.2d at 224–26. Finally, in *Griffin*, we applied the same standard again, requiring that a claimant of a right-of-way easement seeking to invoke the MTA possession exception, for which the period for filing the MTA required notice had expired, to have been in possession of its easement from the notice deadline "up to the commencement of [the] action." *Griffin*, 309 Minn. at 236–37, 244 N.W.2d at 133 (citing *Caroga Realty Co.*,

---

**3.** The deadline for filing notice of a claim under the MTA is 40 years after the property interest was created. *See* Minn.Stat. § 541.023, subd. 1.

**4.** When *B.W. Leo Harris* was decided, the MTA drew a distinction between claims that became 40 years old before or after Jan. 1,

1948. *See* Minn.Stat. § 541.023 (1949). The statute has since been amended to do away with this distinction. *See* Act of Apr. 26, 2001, ch. 50, § 31–32, 35, 2001 Minn. Laws 119, 137–39. The alterations to the quoted material from *B.W. & Leo Harris* reflect the change in the statute.

274 Minn. at 170–72, 143 N.W.2d at 220–21).

Appellants misread the above cases, arguing that neither *B.W. & Leo Harris Co.*, nor its progeny apply in the context of easements under the MTA. Though *B.W. & Leo Harris Co.* deals with adverse possession rather than easements, it principally interprets the MTA, and appellants make no compelling arguments as to why the possession period articulated in that case should not apply here. This is especially true given the fact that we have applied the *B.W. & Leo Harris Co.* possession period in all of the MTA cases dealing with easements discussed above.

Appellants also cite *Wichelman* to support their argument that the proper possession period is the 40 years immediately before the present action. *Wichelman* does not support appellants' argument. *Wichelman* dealt with whether the MTA applied to certain future interests. *See Wichelman*, 250 Minn. at 105, 83 N.W.2d at 816. Though *Wichelman* did address the possession exception for easements briefly in dicta, it did not discuss the length of the possession period at all. *Id.* at 117–18, 83 N.W.2d at 823. We therefore reject appellants' argument that *Wichelman* requires that we depart from *B.W. & Leo Harris Co.* and its progeny.

Appellants argue in the alternative that there should be no set possession period, but rather the court should make an overall factual determination of possession. They base this argument on the plain language of the MTA, which states that the statute shall not "bar the rights of [anyone] in possession of real estate" and which does not mention any particular possession period. Minn.Stat. § 541.023, subd. 6. But we have never undertaken an overall factual determination when interpreting the MTA possession exception. Instead, we have, since shortly after the MTA was enacted, consistently applied the same possession period when addressing the MTA's possession exception. *See, e.g., B.W. & Leo Harris Co.*, 240 Minn. at 49, 59 N.W.2d at 816.

At their core, appellants' arguments that we should announce a novel possession period rely on their assertion that the MTA possession period articulated in earlier cases is unduly burdensome. We do not disagree that it might be challenging for appellants to prove continuous possession of their claimed easements from the 1940's until this action was filed. But we have repeatedly interpreted the language of the MTA to require such proof. Appellants' argument would require that we overrule over 60 years of our precedent. We decline to do so. *See State v. Lee*, 706 N.W.2d 491, 494 (Minn.2005) ("We are 'extremely reluctant to overrule our precedent under principles of stare decisis.' When overruling precedent, we have required a 'compelling reason' to do so." (internal citations omitted) (quoting *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn.2000))).

Appellants also claim that necessity of proof of possession beginning at the deadline for filing MTA required notice is contrary to the understanding of the Minnesota real estate bar. Appellants point to Minnesota Title Standard No. 61, as the primary foundation for this claim. That standard states, as an illustrative example of the MTA possession exception, that "[t]he owner of rights under a ... right-of-way ... or other easement manifested by actual use or occupancy consistent with the nature of the easement created is considered to be in 'possession' of the servient estate." Minn. State Bar Ass'n, *Minnesota Standards for Title Examinations*, No. 61, n. 2 (as amended Nov. 15, 2008). Title Standard No. 61 cites *Wichelman* as authority. *Id.* Our reading of that example,

however, is that it is silent with regard to the possession period required by the MTA. The title standard simply states that a party may invoke the possession exception of the MTA if that party meets the requirements of that exception. The requirements of the MTA possession exception, as discussed above, are that a claimant has met the possession standard over the required possession period, both of which are articulated in our case law.

■ In sum, the appellants may be correct that the possession period applicable here is burdensome. But the MTA has the stated policy that "ancient records shall not fetter the marketability of real estate" and operates to extinguish certain, otherwise-valid interests in real estate if those interest holders failed to file the MTA's prescribed notice. Minn.Stat. § 541.023, subd. 5. Possession is an exception that excuses the failure to file a notice of claim, and is therefore appropriately limited. *See id.*, subd. 6. In our case law laying out the required possession period for easements, we have given effect to the language of the statute in both the stated purpose of the MTA and the possession exception—as we are required to do. *See* Minn.Stat. § 645.17(2) (2008) ("[T]he legislature intends the entire statute to be effective and certain."). The legislature has been aware of our longstanding interpretation and despite several amendments to the MTA since we decided *B.W. & Leo Harris Co.*, the legislature has not acted to change our interpretation. *See* Minn.Stat. § 645.17(4) (2008) ("[W]hen a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language"). We therefore reject appellants' arguments and hold that the MTA possession exception requires proof of possession beginning at the deadline for filing notice under the MTA—i.e., within 40 years of when the property interest was created—and continuing through the filing of the relevant action regarding ownership.

### C.

We turn next to the issue of who bears the burden of proving possession under the MTA possession exception. Appellants argue that the burden of proof should have been on the respondents to prove that appellants conclusively abandoned their easements, rather than on appellants to prove possession as the district court required. Respondents contend that case law clearly places the burden of proof on the appellants.

To support their argument that the burden of proof is on respondents, appellants point to *Wichelman*. Specifically they note language in *Wichelman* that states that for the MTA to operate and extinguish an interest in real estate, "the person against whom the act is invoked must be one who is 'conclusively presumed to have abandoned all right, claim, interest ...' in the property." *Wichelman*, 250 Minn. at 112, 83 N.W.2d at 819 (quoting Minn.Stat. § 541.023, subd. 5). But this language from *Wichelman* does not address burdens of proof. Rather it was part of our interpretation of the MTA itself, interpreting the operation of the MTA to apply only to someone who has been "conclusively presumed to have abandoned" their interest. *Id.* The MTA makes clear to whom that conclusive presumption applies: those who had certain interests in real estate over 40–years old and who did not file the required notice. *See* Minn.Stat. § 541.023, subds. 1, 5. The MTA goes on to state an exception to this conclusive presumption for those in possession of real estate. *Id.*, subd. 6. In this case, the required notice has not been filed, and therefore appellants are conclu-

sively presumed to have abandoned their easements if they do not qualify for the possession exception. Appellants misread *Wichelman* as assigning a burden of proof to respondents.

■■ But our case law does address the allocation of the burden of proof. In *B.W. & Leo Harris Co.* we placed the burden of proof on the party seeking to invoke the MTA possession exception. *B.W. & Leo Harris Co.*, 240 Minn. at 50, 59 N.W.2d at 817. Likewise in *Griffin*, a case dealing with the application of the MTA to easements, we placed the burden of proof on the party seeking to invoke the possession exception We stated:

> Appellant's interest in the ... property was not registered as required by the [MTA]. Thus, if [appellant] is to escape the act's bar, appellant must establish its possession of the [right-of-way easement] to bring it within the exception of subd. 6.

*Griffin*, 309 Minn. at 235, 244 N.W.2d at 133. Both of these cases follow the general rule that a party who stands to benefit from proving the affirmative of a proposition of fact—here the appellants benefitting from establishing possession of their easements—bears the burden of proof as to that proposition. *See Chemlease Worldwide, Inc. v. Brace, Inc.*, 338 N.W.2d 428, 437 (Minn.1983). Further we have stated that "all else being equal, the burden is better placed on the party with easier access to relevant information." *In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, 754 N.W.2d 544, 561 (Minn. 2008) (internal quotation marks omitted). Here appellants know the most about their own possession of the easements and the identities and locations of their predecessors in interest. We therefore hold that the appellants, as the parties seeking the protection of the MTA possession exception, bore the burden of proving possession.

## II.

Having analyzed the law relevant to this case, we turn to an application of that law to the facts, and examine whether under the standards discussed above, summary judgment was properly entered against appellants. Specifically, we must examine whether any of the appellants has demonstrated a genuine issue of material fact as to the applicability of the possession exception in subdivision 6 of the MTA. *See* Minn. R. Civ. P. 56.03.

## A.

■ We address the claims of 12[5] of the 15 appellants first. These appellants were required to file notice under the MTA during the period 1947 to 1949. *See* Minn.Stat. § 541.023, subd. 1. These 12 appellants concede that neither they nor their predecessors in interest filed any such notice. They likewise do not assert that they used their claimed easements before the 1980s.[6] Additionally, these 12 appellants have not offered any evidence of their predecessors in interest having used their claimed easements. These 12 appellants therefore have not created any issue as to possession going back to the late 1940s, 40 years after their interests were created. Thus, under the possession standard and possession period discussed above, none of the 12 appellants created a genuine issue of material fact as to wheth-

---

5. These 12 appellants are Douglas Krinke, Ursula Beate Krinke, Jeffrey Lutz, Brian Lind, Karen Hagan–Lind, Karen Deann, Jonathan Fleck, Susan Fleck, Eugene Ruehle, Shirley Ruehle, Robert Carson, and James Simning.

6. Indeed, several of these appellants alleged that they first started using their claimed easements as recently as 2005 and 2006.

er they fall within the MTA's possession exception. *See* Minn.Stat. § 541.023, subd. 6; *see also, B.W. & Leo Harris Co.*, 240 Minn. at 49, 59 N.W.2d at 816. Consequently, by operation of the MTA, the 12 appellants are conclusively presumed to have abandoned their easements.[7] *See* Minn.Stat. § 541.023, subd. 5.

### B.

■ The remaining three appellants, Josephine Berg Simes, James Berg, and Frima Bender (collectively, the Berg appellants),[8] who all claim a single, shared easement, have asserted continuous use of their claimed easement dating back at least 60 years. Specifically, Simes stated in one of her two affidavits that she has been to her family's property, and that she, a member of her family, or a guest has used the easement every year since 1943 "for purposes of accessing White Bear Lake." Further, in her second affidavit, Simes asserted that she has seen Bender use the easement continually for the past 60 years for the same purpose.

The Berg appellants argue that these affidavits satisfy their burden in creating a genuine issue of material fact as to possession of their claimed easement for the required period under the MTA possession exception. The district court and the court of appeals disagreed, holding that because letters attached to the first Simes affidavit contradicted statements in the affidavits, the Berg appellants had not created an issue for trial as to the possession exception. Those letters state: "Ms. Simes and her family have been members of the dock association next to your property since before the Second World War and have had no reason to exercise their right of entry" and "the Berg/Simes family ... have been using the Dock Association access next to your property for many years, notwithstanding the existence of deeded access to the lake over the easterly portion of your property."

The Sampairs argue, and the district court and court of appeals held, that these letters directly contradict Simes's affidavits, and therefore the Simes affidavits cannot be used to create a genuine issue of material fact of possession of her easement under the "sham affidavit doctrine." *See Risdall v. Brown–Wilbert, Inc.*, 759 N.W.2d 67, 72 (Minn.App.2009), *rev. denied* (Minn. Mar. 17, 2009) ("A self-serving affidavit that contradicts other testimony is not sufficient to create a genuine issue of material fact."). We disagree.[9]

---

**7.** The concurrence/dissent argues that we should deny the respondents' motion for summary judgment, and remand to allow each of the appellants the opportunity to prove adverse possession of the lake-access easements. But the appellants have not pleaded, argued, or attempted to prove adverse possession at any stage of this litigation. Accordingly, that question is not before us. *Duenow v. Lindeman*, 223 Minn. 505, 512, 27 N.W.2d 421, 426 (1947) ("After all, parties to a lawsuit do not become subject to the court's power for all purposes, but only to the extent that judicial power is invoked by the issues raised to decide the particular questions such issues present for decision.").

**8.** Simes and Bender are sisters and Berg is Simes's son. Apparently they all owned their

property and easement in common. Frima Bender has died during the pendency of this case.

**9.** We have recognized that a party cannot create an issue for trial by directly contradicting prior sworn testimony with a later-filed self-serving affidavit. *See Hoover v. Nw. Private Mortgage Banking*, 632 N.W.2d 534, 541 n. 4 (Minn.2001); *Augustine v. Arizant, Inc.*, 751 N.W.2d 95, 101 (Minn.2008) (reaffirming the rule articulated in *Hoover*). That situation does not exist in this case. Simes did not submit one affidavit and then a later self-serving affidavit directly contradicting the first. Rather Simes made her first affidavit, which dealt with her use of the easement and incorporated the letters from her attorneys

When the letters are construed in the light most favorable to the Berg appellants, they are not inconsistent with the assertions in the Simes affidavits of continuous use of the easement. This is so because the letters could be read as related solely to use of the easement for dock access, and not to use of the easement for lake access more generally. When so construed, the letters do not disprove or directly contradict the continued use set forth in the Simes affidavits. The possession alleged in the Simes affidavits is not described in any detail. A trier of fact might ultimately find that the Berg appellants' claimed use of the easement is not credible because it is too general or because of the statements in the attorneys' letters. But given the standard of review for summary judgment, requiring that we view evidence in the light most favorable to appellants, the Simes affidavits raise genuine issues of material fact as to the possession of Simes, Berg, and Bender during the entirety of the possession period. Because the Berg appellants have raised a genuine issue over their continuous possession of the easement going back over 60 years, we hold that the Sampairs were not entitled to summary judgment as to the Berg appellants.

We reverse the grant of the Sampairs' motion for summary judgment as to appellants Berg, Simes, and Bender. We affirm as to all other appellants.

Affirmed in part, reversed in part.

MEYER, J., took no part in the consideration or decision of this case.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, PAUL H., Justice (concurring in part, dissenting in part).

I agree with the court that the possession exception under the Marketable Title Act (MTA), Minn.Stat. § 541.023 (2008), if applied to an easement, requires no more than proof of use of the easement sufficient to put a prudent person on notice, giving due regard to the nature of the easement. I also agree with the court that the burden to prove use of the easement should fall upon those claiming possession. I have reservations about the court's holding that the possession exception requires proof of continuous possession from the deadline for filing the notice of interest required by the MTA, but find it unnecessary to address that question because I would resolve this case on other grounds.

Under the court's holding, most of these appellants never had any interest in the easement purportedly conveyed by their respective deeds, their predecessors in title being deemed to have abandoned the easement sometime before 1950. But it is clear that at least some of the appellants were using the easement when this action was filed. By its terms, the MTA cannot "bar the rights of any person, partnership, or corporation in possession of real estate." Minn.Stat. § 541.023, subd. 6. Adverse possession of an easement requires proof of use of the easement for a period of only 15 years. See Minn.Stat. § 541.02 (2008). If subdivision 6 of the MTA is to have any

that arguably conflicted with her assertions of continuous use of the easement. Simes made a second affidavit shortly thereafter. Simes' second affidavit dealt with Bender's use of the easement. Bender was apparently suffering from Alzheimer's syndrome at the time and was unable to make her own affidavit attest-

ing to her own experiences. So, instead of a second self-serving affidavit directly in conflict with the first, we have a first, arguably internally inconsistent affidavit, and a second affidavit with a separate purpose. We have never applied the sham affidavit doctrine in such a context, and we decline to do so here.

meaning, then a party who cannot prove continuous use of the easement for the period required under the MTA as interpreted by our court must nevertheless be afforded the opportunity to establish ownership of the easement by adverse possession. If we simply affirm the court of appeals, the Torrens certificate will issue without notice of the easement and, under Minn.Stat. § 508.25 (2008), appellants will be forever barred from claiming an easement over the property. On remand, I would allow each of the appellants the opportunity to prove adverse possession of the easement.